Oral Argument not to exceed 15 minutes per side. Robert Proskury for the Appellant. Morning, Your Honors. May it please the Court, the Council, I'd like to preserve four minutes for rebuttal, if that's possible. Your Honors, there are two very important issues that are raised here. We're talking about my client, Vicki Sheldon, who is representing the United States of America as a relator and trying to recover a substantial sum of money that she believes was fraudulently taken by Kettering Hospital. And essentially, this goes back to the old ancient key tom theory, just if it's bad gunpowder or bad potatoes or whatever, if it's sold to the government, the government has a right to get its money back. Well, it's become a little more complex. And if the arguments of the defendant or the appellee, in this case, were to be believed, it would actually be impossible to bring a key tom action. Because no person would have a comprehensive knowledge of both the administrative part of it and the fraudulent part of it. And what I mean by that is, what Vicki Sheldon alleges, based on her relationship as being married to a high up in the hospital, and based on her knowledge of the ethics system because of her prior profession as a nurse and so forth, she was able to identify something that very few people would have been able to identify. And that is that the hospital was not following the procedures that had been set forth by the manufacturer of this ethics system to safeguard confidential information. Now, she does have knowledge about that. She alleges it in her complaint. What she doesn't know the exact specifics of is the person at Kettering that certified to the government that it was in compliance with the regulations, specifically regulation 42 U.S.C. 1395 W-40 that establishes incentive payments. Now, although she doesn't know that information, really there's nobody in the hospital that would know both what she had and the specifics of that basic administrative information. She doesn't know. All she knows is that somebody got access to her records. With respect, Your Honor, she knows a little more than that. And it was caught. She knows that on a recurring basis, that the hospital allowed both her husband and also a fictive person to gain access to her records. And she further knows that had the manufacturer's system been running properly, this could not have happened on a recurring basis because the same name test that the manufacturer of ethics says should be run would have immediately detected this irregular activity. And once it was looked at, would have prevented it. Okay. I'm not sure that you actually plead that it couldn't have happened if they ran the right program. I mean, what we know is that it happened and she was notified, right? Correct, Your Honor. What we pleaded was that they were not following through on what they were required to under the HITECH Act, which is specifically they were required to… The HITECH Act talks about certifications of procedures. Correct. So what evidence do you have that when the certification was made, it was incorrect? The evidence we have is that the certification certifies specifically that they have complied with what is required under the HITECH Act, which includes implementing security measures specific to reduce risk and vulnerabilities, regularly reviewing records of information system activities, and assigning a unique name and number for identifying and tracking the identity of individuals. How do you know that? All three of those are violated because the EPIC report, if properly run, that the one defined by the manufacturer shows you how to identify if the unique numbers are being used properly, and they were not. It shows you how to make sure that a person who should not have access, the same name access, is not getting access. And we know that those procedures were not put in place. How do we know that? Empirically, because of the fact that there was not one violation, but a series of violations of her medical records, Your Honor. Now that's the information that is in front of Vicki Sheldon, and as I'm pointing out, it would be impossible for anyone to also know all the administrative things on the other side of that. It seems to me that your argument is that because there was some authorized access... Unauthorized access, yes, Your Honor. Because there was unauthorized access... Yes, it means that procedures were not in place. Because there was repeated unauthorized access, in a way that would have been prevented had the EPIC system been properly in place, that therefore the EPIC system was not being properly used, and that therefore the certification of high-tech compliance was inaccurate. Just as if you were to take something from my military background, the arms room, every weapon has a serial number, and they have multiple safeties. They've got safety selector switches. They've got safeties on the weapon themselves. If a weapon is discharged outside the arms room, I can know and I can certify that the procedures were not followed. The manufacturer's procedures were not followed. The military's procedures were not followed because if they had been followed, there would not have been a dischargeable weapon outside the arms room. But... This is the same type of thing. You require to have procedures, right? Correct. Okay. And that's what you're certifying, that you have these procedures and you have various, I guess, checks to make sure they're followed. Correct. Right? And that's exactly what we're saying. We're saying that the certification could not be accurate because had there been the procedures in place, as recommended by the manufacturer of this software and system, EPIC system, then these repeated violations could not have occurred. The procedures that they are certifying existed could not have actually been in place or these repeated violations of this nature could not have taken place. And how do you know that? We know that because the EPIC report that should be run once a week, for example, that shows same-name access, it raises a red flag. If you're looking at records, if your name is White and you're investigating the records of someone else named White, a report comes out and says, these are the 15 instances where it occurred. And you go through that and say, okay, well this is Nurse Heather White and she has no relation at all to this other White. But if this report, as recommended by the manufacturer, is run every week as it should be, then what pops up immediately is, oh my goodness, here's Duane Sheldon, a high administrator at the hospital, looking at the medical records of his wife. And that is not supposed to occur. Well, how did they find out? They found out because eventually, I don't know how they found out, but they should have found out much earlier than they did if they had been following the manufacturer's recommendations. What we do know is that Vicki Sheldon eventually gets notice and she says, my goodness, my records have been violated. Well, how often does it happen? And then the hospital responds, but instead of giving Vicki the report that EPIC has, because there is a report that you just hit a key and it runs out the names of unauthorized access and so forth, they type up their own special little homegrown report that doesn't follow the manufacturer's guidelines of how you show unauthorized access. So this allows her to make the inference, Your Honor, that they are not properly using the EPIC system. Well, what do you say to the argument that your client cannot satisfy the requirements of the False Claims Act because she can't, does not identify or allege specific claims for payment? I presume, I think that's what I was starting to talk about to begin with, Your Honor, that my client does know because of the regulation that I have cited that there had to have been a timely certification for payment in order for them to be paid. Yeah, but she doesn't identify the payments, is what I'm saying. Your Honor, in her amended complaint, the complaint that she attempts to amend, she names the titles of the people in the department that were responsible for the certification, and that is as close as she can get without the report in her hand. But my point is that that is not... Well, what about the question I'm raising is whether that's sufficient as a complaint allegation to satisfy the requirements of the Act. Does that render your pleading deficient? I believe it is, Your Honor, and that is because in this case there is one piece of paper that is a required certification under the federal regulation, and it is specifically identified by my client. The fact that everybody knows that that piece of paper exists because it's required by regulation. Everyone knows when it was submitted. It had to be submitted before the deadline in order for them to get incentive payments. We're playing a dangerous game if we say that the United States cannot recover a large sum of money that was fraudulently taken from it by a false certification, even when everyone knows the paper exists, when it was submitted by, simply because my client doesn't have that paper in her hand because the government hasn't responded to her Freedom of Information Act request. It's all so speculative. I mean, just because somebody got away with something doesn't mean there aren't procedures in place and doesn't mean that when they sent the certification they didn't have what was required, which was basically a system and, you know, whatever was required. With respect to that, Your Honor, with respect it's not speculative at all. It's a certainty. It's a certainty that this document was submitted timely in order for Kettering to get payment. And it's a certainty that the procedures that they certified were false because if they had used the procedures recommended by the manufacturer and required by the makers of Epic Software that are used by hospitals on a regular and routine basis, there would not have been repeated violations of my client's privacy interests. You don't know that. Perhaps they had the reports and he instructed his people to ignore it. Well, I don't understand, Your Honor. I'm sorry. You're saying that they weren't doing what they said that they would do, which is have a system in place, which I assume they paid for, so they didn't lie when they said they paid for it, and use it. And that's a general statement, that this is what we're going to do. And they would have had to have lied at the time that they said it. So the fact that somewhere down the line somebody who has some control over the people who work there goes ahead and gets them to violate the system. Your Honor, I think, with respect, that's really something down the road once we're in the discovery process of the trial for that to be brought up. At this pleading stage, what we're saying is simply that they were responsible for certifying that they had implemented effective security measures. And they have not. You don't know that they did not implement effective security measures? I do. I can say for a certainty they did not implement effective security measures because had they done so, there would not be repeated violations. There might be one. There might be an isolated... Every single hospital that has a HIPAA violation could be in the same position. Because if their procedures were effective, you wouldn't have a violation. Your Honor, I think that would be true on isolated violations. There are always going to be mistakes. There are always going to be things that slip through the cracks. But when it happens on a recurring basis, then that indicates that it's not been an effective security measure. That's what is not inspected, is probably neglected. They were certifying, not only that they had paid for this EPIC system, but they were also certifying that they were implementing security measures. And if you implement security measures, some things cannot happen. It's reps it ipsa loquitur in a sense because of the fact that this violation would have been caught, absolutely would have been caught if that software had been run. And yet it occurred on a recurring basis long after those same name reports would have caught it, long after that individual identifying name report would have caught it. Since those things did not happen, I think it is not only reasonable, it's far beyond speculation. It's very probable. And it looks like my time is up. Yes. Thank you. I'm going to let you finish a sentence, but that was a very long sentence. All right. May it please the Court, Counsel. Good morning. My name is Natalie Furness and I'm here on behalf of Kettering Health Network, which I may refer to as the hospital this morning. Appellant's claim that Kettering Health Network violated the False Claims Act is based entirely upon her theory that the hospital failed to comply with the High Tech Act. However, neither her amended complaint nor her proposed second amended complaint set forth any factual allegations that accept it as true, would constitute a violation of the High Tech Act. And this deficiency alone supports the District Court's decision. Well, she's arguing that there's a system, you said you had it, and if you had utilized it, this couldn't have happened. To respond to that, Your Honor, what she has alleged, and what she alleged in her complaint specifically, was that the hospital misrepresented to the government when it responded affirmatively to the following statement, that it had conducted or reviewed a security risk analysis pursuant to 45 CFR section 164.308A, which I'll come back to in a minute, and implemented security updates as necessary and corrected identified security deficiencies as part of its risk. Now, what she cites to in support of this violation, she cites back to the fact merely that she was not provided a particular type of clarity, a particular type of report, a clarity report. A report that the statutes to which she cites, both the regulations she cited that I just quoted, section 164.308, as well as another subsection, section I believe 312 of the same provision, her only support for her statement that they have violated that is that she was not provided a particular clarity report even though those regulations do not require... But I think she's saying something else, that sure, it's up to the hospital to decide what their system's going to be, but if you use this system, this EPIC system, this is how you do it. This is how one implements the EPIC system, and that you didn't do it. More specifically, I believe, Your Honor, what she says is that she presumes that the reports were not run and that the hospital did not implement the system. And she indicates both in her complaint as well as I believe her counsel indicated that they've inferred that those reports, assuming, for example, that running the reports in the manner that counsel has suggested is in fact a requirement of the code. They are presuming or have inferred that the hospital did not run those reports simply because she was not provided a copy of those reports. But what she also establishes in her complaint is that her knowledge of this breach came entirely from information that the hospital provided her. Indeed, in her own complaint, she alleges that the hospital purchased and implemented a computer software system, that it informed the relator that there had been or appeared to have been a privacy breach, that they conducted an investigation into the breach, that they prepared audit reports, which they gave her and which she attached to her complaint. Those complaints merely were not the, excuse me, those reports were simply not the type of report she says she wanted. And as established by the exhibit that she attaches to her own complaint, the hospital informed her that it had self-reported to the Department of Health and Human Services the possibility that there had been a violation. So I think your honor is correct in that ultimately the relator was trying to establish that the hospital had failed to implement the policies and procedures required under the Act, but the fact is the allegations set forth in her complaint as to what the hospital did weigh in favor of a finding that the hospital was actually complying with the Act, had implemented the systems, policies, and procedures required, and in fact was attempting to work through any type of remediation required under the Act to the extent that there had been a violation. None of those allegations suggest... Why aren't these all questions of fact? As to whether the hospital complied with the HITECH Act, your honor? Yeah, I mean if there's I mean if there's plausible allegations that they didn't. I would submit, your honor, that there are not plausible allegations that they did not The factual allegation that the relator cites in support of her claim is simply that she was not provided the particular type of clarity report that she requested. To the contrary, to your question as to whether these are questions of fact, the other allegations, the factual allegations she make actually establish that there was compliance with the HITECH Act. I'm not certain if I responded adequately to your question. So does a plaintiff in this kind of action have to know all the facts to complete it? Certainly, she does not have to know all of the facts, and I believe as this court has found, for example, when one is bringing a false claim act that relates to an alleged fraud of a corporation, she need not know the identity of every single individual who may have participated in the fraud. However, she must have personal first-hand knowledge of significant facts to support her claim, such as the time, place, and content of the alleged misrepresentations. And here, what the record establishes is that the only knowledge that Ms. Sheldon had was knowledge that was provided to her by the hospital. When the hospital informed her of the breach, when the hospital informed her and provided her a report with the identities of the individuals who appeared to have accessed her record, when the hospital informed her by providing her audit reports showing its investigation, her knowledge comes entirely from the hospital. And so, for example, I'll point your honor to another instance in which this becomes significant. The complaint is devoid, for example, of any facts to allege when the alleged misrepresentation by the hospital to the government occurred in relation to when her individual privacy breach occurred. And this is significant. This is not just some type of hoop to be jumped through for purposes of bringing the fraud claim. The reason is significant is the HITECH Act did not require immediate compliance. That is, beginning in 2011, providers were encouraged and they could begin receiving incentive payments for early adoption of the electronic records system and receive incentive payments for doing so. That program began in 2011. It was a staged rollout, a three-step process. So that is, providers were not required to become compliant immediately. The first stage was a two-year stage that providers had to demonstrate compliance for a two-year period. There were a list of 25 different criteria that providers were required to affirm that they were compliant with. However, incidentally, not every single one of those criteria required 100% compliance. And so, by no means was the HITECH Act something that required, in one fell swoop, compliance. And therefore, it's significant in a number of ways, the fact that the complaint does not establish, again, when this alleged fraud occurred in relation to when her privacy breach occurred. Plaintiff cannot establish, and has not, sufficient to establish, that at the time the hospital made the representation to the government that it implemented systems and procedures designed to prevent the fraud, that it made that statement intentionally, knowingly false. Would you like to address the race adjudicator issue? Certainly, Your Honor. As we raised in our brief, one of the basis upon which the court would be properly granted the hospital's motion to dismiss the complaint was the fact that the court action, she brought a state court action, an action in state court, based upon the same transaction events or occurrence of events, namely that her private health information had been breached when her now ex-husband, at the time husband, who was an employee of the hospital, had accessed her record improperly. In that action, however, she failed to bring any of the claims, the false claims that she brings in this action. The state court entered its decision, reached a final determination on the merits before the hospital filed its motion to dismiss this action. That, in and of itself, is sufficient to establish that the claims in this case were barred by the doctrine of race judicata. Applying the standard adopted by Ohio, a dismissal by a state court action, excuse me, a dismissal by a state court pursuant to 12b6 motion is considered a decision on the merits with full race judicata effect. Where she chose to file two actions simultaneously that arose from the same transaction or occurrence, she bears the risk that one of those two actions will reach a final determination first and that she will be stuck, that as a result she will be precluded from bringing her claims in the parallel action. If your Honor has specific questions regarding the application of the race judicata argument, I'm happy to address those. I know of the things that were raised in the briefs, the appellant has argued that there was not mutuality of interest between the parties to the two actions. But again, there is sufficient case law that we've cited in our brief that addresses the fact that the fact that she is bringing this action in her capacity as a relator on behalf of the United States in and of itself is not a bar to the application of the race judicata doctrine that was set forth in a recent decision by this court in the Awad case which we've cited in our briefing. Additionally, one of the arguments that the appellant made in her briefs was that she couldn't have the test for purposes of determining whether there's a final decision on the merits is determined based upon which action was filed first and citing the fact that this federal court action was actually filed before her state court action. That position is quite simply just contrary to the established law that indicates it is the first action to reach a final valid decision on the merits that matters for purposes of determining the timing. Other of the arguments that the appellant raised relative to the race judicata argument included that she could not have possibly brought her personal tort claims in federal court as part of this action because the court would have had to exercise supplemental jurisdiction. In response to that argument, I think there are two major flaws with that line of reasoning. First of all, for purposes of the race judicata analysis, what is relevant is whether or not she could have brought this action in these claims in the state court action because that was the action in which there was a final determination reached first. That being said, even if she were to argue that race judicata should not apply because she was unable to bring her state court claims in federal court, that too is without merit. The federal courts often exercise supplemental jurisdiction over state law claims. The arguments are just simply not supported by the jurisprudence of this court. Can you bring these ACA claims in state court? Yes, you can, Your Honor. Unless Your Honors have other questions, I will see the rest of my time and I would respectfully request that the court affirm the decision of the district court in favor of my client, Kettering Health Network. Thank you. Your Honor, in regard to the race judicata issue, I think there is no way that the federal court could have exercised jurisdiction over this particular state law matter simply because it's a matter of first impression in Ohio, and as the court has seen in the supplemental authority, we've taken it to the Supreme Court of Ohio to determine whether... There's no criteria for race judicata though, whether it's a case of first impression. Sort of, in that the federal court in exercising supplemental jurisdiction normally does not do that if it's a case without... Tell me about your first... You split your causes of action, right? You put... Correct, Your Honor. We put the Ketom action under seal in the federal court with just Vicki Sheldon who had the knowledge of the fraud and there's a state cause of action that also involves her daughter and her granddaughter that uses personal tort claims, invasion of privacy, HIPAA and so forth, which has many of the same operative facts, but not all of them. And she's saying that you should have started one lawsuit because they had the same operative facts. The strategic reasons for not doing so I think are outlined in the brief, but I would like to talk about some of the issues that were raised by this court on the other issue, that race judicata is what it is and the hospital alleges that she knew nothing other than what the hospital provided and that's simply not true. What she knew that was key that enabled her to detect the fraud was that her husband, a high-ranking officer in the hospital, had a paramour. He was sharing this information with that paramour. She had the ability because she had different information than the hospital of stepping back and saying wait a minute, this doesn't make sense to you. I know why the invasion of my privacy took place, but that it took place on a recurring basis. When you add that up, she had more information. She's not a stranger. She's not somebody that gets a windfall. She was a victim of something the hospital did and she was closer to it than a mere observer. Those are the cases that try to weed out somebody that shouldn't be able to collect on a key Tom action. She is much closer to an insider than she is to a perfect stranger. The hospital makes the argument that because the timing was not specifically laid out, it's impossible for her to pinpoint that a violation occurred. That's not true either because the timing is laid out. The regulation itself states that by 2012 you'll have had to have made the certification that I gave you. By 2013 you have to make the certification. It's a repeated certification and it becomes more stringent as time goes on. That's true, but at least by the time these violations were occurring, at the end of that period, the hospital makes a certification that precisely lines up with the language in the regulation. It has to. For those reasons, Your Honor, unless there's further questions, I would ask that this court reverse the district court and either instruct them to dismiss it without prejudice or to take it off. Thank you, Your Honor. Thank you for your arguments and the case is submitted.